JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

EUGENE M. THIROLF
Director,
KENNETH L. JOST
Deputy Director,
Office of Consumer Litigation

JOHN W. BURKE (VA. BAR NO. 72780)
Trial Attorney, Office of Consumer Litigation
Civil Division
United States Department of Justice
P.O. Box 386
Washington, D.C. 20044
Telephone: 202-353-2001
Facsimile: 202-514-8742
Email: josh.burke@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CV 08 0642    MEJ

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

Member Source Media LLC, doing business as ConsumerGain.com, PremiumPerks.com, FreeRetailRewards.com, and GreatAmericanGiveaways.com, and
Chris Sommer, individually and as Manager of Member Source Media LLC,

    Defendants.

Case No. _____

COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

    Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its complaint alleges:

Complaint                     Page 1 of 13

1. Plaintiff brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and under Section 7(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" or the "CAN-SPAM Act"), 15 U.S.C. § 7706(a), to obtain monetary civil penalties, a permanent injunction, and other equitable relief for defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 5(a) of CAN-SPAM, 15 U.S.C. § 7704(a).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), and 57b. This action arises under 15 U.S.C. §§ 45(a) and 7706(a).

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), 1395(a), and 15 U.S.C. § 53(b).

## INTRADISTRICT ASSIGNMENT

4. The events giving rise to the United States' claims occurred in substantial part in San Mateo County.

## DEFENDANTS

5. Defendant Member Source Media LLC ("Member Source Media") is a Limited Liability Company organized under the laws of California with its principal place of business located at 204 East 2nd Avenue, Suite 517, San Mateo, CA 94401.

6. Member Source Media LLC does business as ConsumerGain.com, PremiumPerks.com, FreeRetailRewards.com, and GreatAmericanGiveaways.com. Since November 2004, Member Source

Media has formulated, directed, controlled, or participated in the acts and practices set forth in this complaint. Member Source Media resides in the Northern District of California and transacts business within this District and throughout the United States.

7. Defendant Chris Sommer is the Manager and sole owner of Member Source Media. At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices set forth in this complaint. Chris Sommer transacts or has transacted business in this District and throughout the United States.

## DEFINITIONS

8. **"Electronic mail message"** (or **"email"**) means a message sent to a unique email address. 15 U.S.C. § 7702(6).

9. **"Electronic mail address"** means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an email message can be sent or delivered. 15 U.S.C. § 7702(5).

10. **"Commercial electronic mail message"** means any email message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including the content on an Internet website operated for commercial purposes). 15 U.S.C. § 7702(2).

11. **"Initiate,"** when used with respect to a commercial email message, means to originate or transmit such message or to procure the origination or transmission of such message. 15 U.S.C. § 7702(9).

12. **"Landing page"** means, in online marketing, a specific web page that a visitor reaches after clicking a link or advertisement. This page usually showcases content that is an extension of the link or ad.

13. **"Procure,"** when used with respect to the initiation of a commercial email message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf. 15 U.S.C. § 7702(12).

14. **"Protected computer"** means a computer which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. 15 U.S.C. § 7702(13); 18 U.S.C. § 1030(e)(2)(B).

15. **"Sender"** means a person who initiates a commercial email message and whose product, service, or Internet website is advertised or promoted by the message. 15 U.S.C. § 7702(16).

## DEFENDANTS' BUSINESS ACTIVITIES

16. Since November 2004, and continuing to the present, Defendants, in connection with promotions and advertisements on their websites, have offered consumers purportedly free merchandise, such as iPods, laptop computers, and Visa gift cards.

17. Defendants advertise and market their offers through email and Web-based ads. Defendants' emails contain subject lines such as: "Congratulations. You've won an iPod Video Player"; "Here are 2 free iPod Nanos for You: confirm now"; "Nascar Tickets Package Winner"; "Confirmation required for your $500 Visa Gift Card"; or "Second Attempt: Target Gift Card Inside." Defendants' Web-based ads contain similar representations: "CONGRATULATIONS! You Have Been Chosen To Receive a FREE GATEWAY LAPTOP." (Such products and items are referred to herein as "promised free merchandise.")

18. Many of Defendants' emails and Web-based ads represent, expressly or by implication, that the consumer viewing the message has won a contest, or has been specially selected to receive a gift or prize.

19. Defendants' emails and Web-based ads contain links that, when clicked on, take one to a "landing page" operated by Defendants or their affiliates. Each landing page recapitulates and expands upon Defendants' initial promised free merchandise offer. For example, the landing page for Defendants' email offer notifying consumers that their "Target Gift Card [is] Inside" encourages consumers to "Claim Your FREE $500 Target Gift Card Now!"

20. Defendants do not clearly and conspicuously disclose that to obtain the promised free merchandise one must incur expenses or other obligations. A consumer must accept and pay for - in the Defendants' parlance, "complete" or "participate in" - a certain number of goods or services promoted by third parties

Complaint                Page 5 of 13

to qualify for the promised free merchandise that Defendants promote in their emails and Web-based ads. Moreover, Defendants do not clearly and conspicuously disclose the costs and obligations associated with participating in third-party promotions, such as applying and qualifying for credit cards.

21. On each landing page, Defendants request the consumer to enter his or her email address, followed by his or her name and mailing address. Defendants use this information, in part, to send to the consumer a "welcome" email containing a password and information on how to access the consumer's account on Defendants' websites. A consumer must have access to his or her account to obtain the promised free merchandise. However, in numerous instances, the consumer does not receive Defendants' "welcome" email because the consumer's email provider treats Defendants' email as spam, blocking it or filtering it so that it never reaches the consumer's inbox.

22. Once the consumer has submitted his or her personal information to "start the claim process," Defendants lead the consumer through a series of web pages containing advertisements for various goods and services from third parties. Unbeknownst to the consumer, this is only an introductory tier of "optional" advertisements and offers, after which are three additional tiers of offers that the consumer will have to navigate before he or she can qualify for the promised free merchandise. "Optional" offers do not qualify the consumer for the promised free merchandise.

23. After the consumer navigates Defendants' "optional

promotions" - often so multitudinous as to take up five or six consecutive computer screens, each with multiple offers - he or she eventually reaches a link that, when clicked, takes the consumer to the first of three tiers of offers in which the consumer must participate to obtain the promised free merchandise.

24. Defendants group the tiers of offers that qualify the consumer for the promised free merchandise into three categories. In each category, there are numerous offers. Defendants require the consumer to "participate in" multiple offers from each category to obtain the promised free merchandise.

25. Clicking on each offer reveals what the consumer must do to "participate in" the offer. In some cases, "participating in" an offer entails paying money or incurring some other detriment, such as qualifying and applying for credit cards. Defendants require the consumer to participate in multiple offers before he or she can progress to the next tier of offers.

26. Some of the offers have free trial periods, but require the consumer to participate for a minimum period of time to qualify for Defendants' promised free merchandise. Moreover, many such offers contain negative option components in which the consumer who does not cancel will be billed automatically.

27. In many instances, the consumer stops trying to qualify for Defendants' promised free merchandise, either because of the cost involved or the time and effort required. Although the consumer has expended money or incurred other obligations in pursuit of Defendants' promised free merchandise, because he or

Complaint                    Page 7 of 13

she has not completed all of Defendants' required third-party promotions, the consumer does not receive the promised free merchandise.

28. In most instances, it is impossible for the consumer to qualify for Defendants' promised free merchandise without spending money.

## DEFENDANTS' EMAIL PRACTICES

29. Since November 2004, and continuing to the present, Defendants have initiated the transmission of commercial email messages to protected computers. The primary purpose of these commercial email messages has been the commercial advertisement or promotion of Internet websites operated for a commercial purpose by Defendants.

30. Defendants are "initiators" with respect to an email message when they have either originated or transmitted a message themselves or have procured the origination or transmission of a message through payments or other consideration, or inducements, to others.

31. Defendants are "senders" with respect to an email message when they have initiated a message and it is Defendants' websites that are being advertised or promoted by such message.

32. In numerous instances, to induce consumers to open and read their commercial emails, Defendants have initiated commercial email messages that contain subject headers that misrepresent the content or subject matter of the message, including, but not limited to, false representations that

consumers have won a contest.

## VIOLATIONS OF THE FTC ACT

33. As set forth below, Defendants have violated Section 5(a) of the FTC Act in connection with advertising, offering, marketing, and promoting of promised free merchandise.

## COUNT I

34. In numerous instances, Defendants have represented, expressly or by implication, that Defendants' promised free merchandise is without cost or obligation.

35. Defendants have failed to disclose or to disclose adequately to consumers the material terms and conditions of their program, including:

    a. that consumers must pay money or other consideration to participate in Defendants' program; and

    b. the costs and obligations for participating in Defendants' program.

36. As a result of the representation set forth in Paragraph 33, Defendants' failure to disclose or to disclose adequately the material information set forth in Paragraph 34 is deceptive, and violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATION OF THE CAN-SPAM ACT

37. The CAN-SPAM Act, 15 U.S.C. § 7701 et seq., became effective on January 1, 2004, and has since remained in full

force and effect.

38. Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2), states:

> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 45 of this title).

39. Section 7(e) of CAN-SPAM, 15 U.S.C. § 7706(e), states that in any action to enforce compliance through an injunction with Section 5(a)(2) and other specified sections of CAN-SPAM, the FTC need not allege or prove the state of mind required by such sections.

40. Section 7(a) of the CAN-SPAM Act, 15 U.S.C. § 7706(a), states:

> [T]his chapter shall be enforced by the [FTC] as if the violation of this chapter were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57a(a)(1)(B)).

## COUNT II

41. In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages that contained subject headings that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of

Complaint                Page 10 of 13

the message.

42. Therefore, Defendants' acts or practices violate Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2).

## CONSUMER INJURY

43. Consumers throughout the United States have been injured as a result of Defendants' unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and to harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

44. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

45. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d) (1997), authorizes this Court to award monetary civil penalties of not more than $11,000 for each violation of CAN-SPAM. Defendants' violations of CAN-SPAM were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

46. This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to remedy injury caused by Defendants' violations of CAN-SPAM and the FTC Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and 57b, and pursuant to its own equitable powers:

1. Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this complaint;

2. Award Plaintiff monetary civil penalties from Defendants for every violation of CAN-SPAM;

3. Award Plaintiff such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), including, but not limited to, rescission of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

4. Enter a permanent injunction to prevent future violations of the FTC Act and CAN-SPAM by Defendants;

5. Order Defendants to pay the costs of this action; and

6. Award Plaintiff such other and additional relief as the Court may determine to be just and proper.

| | | |
|--|--|--|
|1| Dated: January 28, 2008 | Respectfully submitted, |
|2| OF COUNSEL: | FOR THE UNITED STATES OF AMERICA |
| | LOIS C. GREISMAN | JEFFREY S. BUCHOLTZ |
|3| Associate Director for | Acting Assistant Attorney General |
| | Marketing Practices | Civil Division |
|4| FEDERAL TRADE COMMISSION | U.S. DEPARTMENT OF JUSTICE |

OF COUNSEL:
LOIS C. GREISMAN
Associate Director for Marketing Practices
FEDERAL TRADE COMMISSION

STEPHEN L. COHEN
ETHAN ARENSON
Attorneys
Federal Trade Commission
600 Pennsylvania Ave., N.W.,
Washington, DC 20580
PHONE: 202-326-3222; 326-2204
FAX: 202-326-3395

FOR THE UNITED STATES OF AMERICA
JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

EUGENE M. THIROLF
Director,
KENNETH L. JOST
Deputy Director,
Office of Consumer Litigation

/s/ John W. Burke

JOHN W. BURKE
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Telephone: 202-353-2001
Facsimile: 202-514-8742
Email: josh.burke@usdoj.gov