JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

EUGENE M. THIROLF
Director,
KENNETH L. JOST
Deputy Director,
Office of Consumer Litigation

JOHN W. BURKE (VA. BAR NO. 72780)
Trial Attorney, Office of Consumer Litigation
Civil Division
United States Department of Justice
P.O. Box 386
Washington, D.C.  20044
Telephone: 202-353-2001
Facsimile: 202-514-8742
Email: josh.burke@usdoj.gov

Attorneys for Plaintiff United States of America

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**Member Source Media LLC, doing business as ConsumerGain.com, PremiumPerks.com, FreeRetailRewards.com, and GreatAmericanGiveaways.com, and Chris Sommer, individually and as Manager of Member Source Media LLC,**<br><br>    **Defendants.** | **Case No. CV 08-642**<br><br>**STIPULATED FINAL JUDGMENT FOR CIVIL PENALTIES AND PERMANENT INJUNCTIVE RELIEF** |

        Plaintiff, the United States of America, acting upon

notification and authorization to the Attorney General by the

Federal Trade Commission ("FTC" or the "Commission"), pursuant to

Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"),

15 U.S.C. § 56(a)(1), has filed a complaint pursuant to Sections

1  5(a)(1), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act,

2  15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a), and 57b and

3  under Section 7(a) of the Controlling the Assault of Non-

4  Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" or

5  the "CAN-SPAM Act"), 15 U.S.C. § 7706(a), to secure civil

6  penalties, a permanent injunction, and other equitable relief for

7  Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C.

8  § 45(a), and Section 5(a) of CAN-SPAM, 15 U.S.C. § 7704(a).

9      Defendants have waived service of the Summons and Complaint;

10  the parties have been represented by the attorneys whose names

11  appear hereafter; and the parties have agreed to settlement of

12  this action upon the following terms and conditions, without

13  adjudication of any issue of fact or law and without Defendants

14  admitting liability for any of the matters alleged in the

15  Complaint.

16      THEREFORE, on the joint motion of the parties, it is hereby

17  ORDERED, ADJUDGED AND DECREED as follows:

18                          **<u>FINDINGS</u>**

19  1.  This Court has jurisdiction over the subject matter of this

20  action pursuant to 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), 57b,

21  and 7706(a), and 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

22  2.  Plaintiff and Defendants consent to jurisdiction and venue

23  in this District.

24  3.  The activities of Defendants are in or affecting commerce,

25  as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

26  4.  The Complaint states a claim upon which relief may be

27  granted against Defendants under Section 5(a) of the CAN-SPAM

28

1  Act, 15 U.S.C. § 7704(a), and Sections 5(a), 5(m)(1)(A), 13(b)

2  and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b),

3  and 57b.

4  5.    Defendants have entered into this Stipulated Final Judgment

5  For Civil Penalties And Permanent Injunctive Relief ("Order")

6  freely and without coercion.

7  6.    Defendants hereby waive all rights to appeal or otherwise

8  challenge or contest the validity of this Order.

9  7.    Defendants agree that this Order does not entitle Defendants

10  to seek or to obtain attorneys' fees as a prevailing party under

11  the Equal Access to Justice Act, 28 U.S.C. § 2412, and Defendants

12  further waive any rights to attorneys' fees that may arise under

13  said provision of law.

14  8.    Entry of this Order is in the public interest.

15  **DEFINITIONS**

16      For the purpose of this Order, the following definitions

17  shall apply:

18      1.    "Commercial electronic mail ('email') message" means

19  any email message the primary purpose of which is the commercial

20  advertisement or promotion of a commercial product or service

21  (including content on an Internet website operated for a

22  commercial purpose) and that further satisfies the requirements

23  of 16 C.F.R. §§ 316.1 - 316.5, as they exist now and may be

24  amended.

25      2.    Unless otherwise specified, "Defendants" means Member

26  Source Media LLC, d/b/a ConsumerGain.com, PremiumPerks.com,

27  FreeRetailRewards.com, and GreatAmericanGiveaways.com, Chris

28

1 Sommer, and their successors and assigns.

2     3.   "Document" is synonymous in meaning and equal in scope

3 to the usage of the term in Federal Rule of Civil Procedure

4 34(a), and includes writings, drawings, graphs, charts,

5 photographs, audio and video recordings, computer records, and

6 other data compilations from which information can be obtained

7 and translated, if necessary, into reasonably usable form through

8 detection devices.  A draft or non-identical copy is a separate

9 document within the meaning of the term.

10     4.   "Electronic mail ('email') address" means a

11 destination, commonly expressed as a string of characters,

12 consisting of a unique user name or mailbox (commonly referred to

13 as the "local part") and a reference to an Internet domain

14 (commonly referred to as the "domain part"), whether or not

15 displayed, to which an email message can be sent or delivered.

16     5.   "Electronic mail ('email') message" means a message

17 sent to a unique email address.

18     6.   "Initiate," when used with respect to a commercial

19 email message, means to originate or transmit such message or to

20 procure the origination or transmission of such message, but

21 shall not include actions that constitute routine conveyance of

22 such message.  For purposes of this Order, more than one person

23 may be considered to have initiated a message.

24     7.   "Landing page" means, in online marketing, a specific

25 web page that a visitor reaches after clicking a link or

26 advertisement in an email or banner ad.  This page usually

27 showcases content that is an extension of the link or ad.

28

Stip. Final Judgment

8.   "Person" means a natural person or a corporation, partnership, proprietorship, limited liability company, or other organization or legal entity, including an association, cooperative, or agency, or other group or combination acting as an entity.

9.   "Procure," when used with respect to the initiation of a commercial email message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf.

10.   "Recipient," when used with respect to a commercial email message, means an authorized user of the email address to which the message was sent or delivered.  If a recipient of a commercial email message has one or more email addresses in addition to the address to which the message was sent or delivered, the recipient shall be treated as a separate recipient with respect to each such address.  If an email address is reassigned to a new user, the new user shall not be treated as a recipient of any commercial email message sent or delivered to that address before it was reassigned.

11.   "Sender," when used with respect to a commercial email message, means a person who initiates such a message and whose product, service, or Internet website is advertised or promoted by the message.

<u>**ORDER**</u>

**I.   PROHIBITION AGAINST FAILING TO DISCLOSE MATERIAL INFORMATION**

IT IS THEREFORE ORDERED that Defendants, their successors, assigns, affiliates, subsidiaries, officers, agents, servants,

and employees, and those persons in active concert or
participation with them who receive actual notice of this Order
by personal service or otherwise are hereby permanently
restrained and enjoined from:

A.    In any email and online advertisement, and on any
landing page associated with such email or online advertisement,
that contains any direct or implied representation made by
Defendants, or made by any authorized agent on behalf of
Defendants, that a product or service is free, failing to
disclose, in the same color, font, and size, and within close
proximity to such representation that a purchase is required, or
that purchases are required, to obtain such product or service,
when such is the case;

B.    On any landing page associated with any direct or
implied representation made by Defendants, or made by any
authorized agent on behalf of Defendants, that a product or
service is free, failing to disclose, in a clear and conspicuous
manner:

1.    A list of the monetary obligations a consumer is
likely to incur to obtain the advertised product
or service, when such is the case;

2.    A list of any non-monetary obligations a consumer
is likely to incur to obtain the advertised
product or service, such as having to apply and
qualify for credit cards or an automobile loan,
when such is the case.

The disclosures specified in subparagraphs 1 and 2 of this

1  Part may be made from such landing page via a hyperlink, provided
2  that the hyperlink is labeled to convey the nature and relevance
3  of the information to which it leads, and is clearly and
4  conspicuously disclosed.

5  **II.   PROHIBITION AGAINST VIOLATING THE CAN-SPAM ACT**

6      IT IS FURTHER ORDERED that Defendants, their successors,
7  assigns, affiliates, subsidiaries, officers, agents, servants,
8  and employees, and those persons in active concert or
9  participation with them who receive actual notice of this Order
10 by personal service or otherwise are hereby permanently
11 restrained and enjoined from violating the CAN-SPAM Act,
12 15 U.S.C. §§ 7701 *et seq.*, attached hereto as Attachment A, and
13 as it may be amended, by, including, but not limited to,
14 initiating the transmission of a commercial email message that
15 misrepresents the content or subject matter of the message.

16 **III.   CIVIL PENALTIES**

17     IT IS FURTHER ORDERED that Defendants shall pay to Plaintiff
18 a civil penalty, pursuant to Section 5(m)(1)(A) of the Federal
19 Trade Commission Act, 15 U.S.C. § 45(m)(1)(A), in the amount of
20 $200,000 as follows:

21     A.   Defendants shall make the payment required by this Part
22 within ten (10) business days of the date of entry of this Order
23 by electronic fund transfer or certified or cashier's check in
24 accordance with the instructions provided by the Office of
25 Consumer Litigation, Civil Division, U.S. Department of Justice,
26 Washington, D.C. 20530, for appropriate disposition;

27     B.   In the event of any default in payment, which default

28

1  continues for ten (10) business days beyond the due date of

2  payment, the entire unpaid penalty, together with interest, as

3  computed pursuant to 28 U.S.C. § 1961, from the date of default

4  to the date of payment, shall immediately become due and payable;

5       C.   This judgment represents a civil penalty owed to the

6  United States Government and is not compensation for actual

7  pecuniary loss.  The Defendants agree that the facts as alleged

8  in the Complaint filed in this action shall be taken as true,

9  without further proof, in any subsequent litigation filed by or

10 on behalf of the Commission to collect any unpaid amount or

11 otherwise enforce its rights pursuant to this Order, including a

12 nondischargeability complaint filed in any bankruptcy case; and

13      D.   Proceedings initiated under this Part are in addition

14 to, and not in lieu of, any other civil or criminal penalties

15 that may be provided by law, including any other proceedings the

16 Plaintiff may initiate to enforce this Order.

17                    **IV.   COMPLIANCE MONITORING**

18      **IT IS FURTHER ORDERED** that, for the purpose of monitoring

19 and investigating compliance with any provision of this Order:

20      A.   Within ten (10) days of receipt of written notice from

21 a representative of the Commission or Plaintiff, Defendants each

22 shall submit additional written reports, sworn to under penalty

23 of perjury; produce documents for inspection and copying; appear

24 for deposition; and/or provide entry during normal business hours

25 to any business location in such Defendants' possession or direct

26 or indirect control to inspect the business operation;

27      B.   In addition, the Commission and Plaintiff are

28

authorized to monitor compliance with this Order by all other
lawful means, including but not limited to the following:

          1.    Obtaining discovery from any person, without
               further leave of court, using the procedures
               prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36,
               and 45;

          2.    Posing as consumers and suppliers to Defendants,
               Defendants' employees, or any other entity managed
               or controlled in whole or in part by Defendants,
               without the necessity of identification or prior
               notice; and

    C.    Defendants shall permit representatives of the
Commission or Plaintiff to interview any employer, consultant,
independent contractor, representative, agent, or employee who
has agreed to such an interview, relating in any way to any
conduct subject to this Order.  The person interviewed may have
counsel present.

    ***Provided, however,*** that nothing in this Order shall limit
the Commission's lawful use of compulsory process, pursuant to
Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to
obtain any documentary material, tangible things, testimony, or
information relevant to unfair or deceptive acts or practices in
or affecting commerce (within the meaning of 15 U.S.C.
§ 45(a)(1)).

              **V.   COMPLIANCE REPORTING BY DEFENDANTS**

    IT IS FURTHER ORDERED that, in order that compliance with
the provisions of this Order may be monitored:

A.    For a period of five (5) years from the date of entry of this Order:

      1.    Defendant Chris Sommer shall notify the Commission of the following:

          a.    Any changes in his residence, mailing addresses, and telephone numbers within ten (10) days of the date of such change;

          b.    Any changes in his employment status (including self-employment), and any change in his ownership in any business entity, within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that he is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business or employment; and

          c.    Any changes in his name or use of any aliases or fictitious names; and

      2.    Defendants shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor

entity; the creation or dissolution of a
subsidiary, parent, or affiliate that engages in
any acts or practices subject to this Order; the
filing of a bankruptcy petition; or a change in
the corporate name or address, at least thirty
(30) days prior to such change, *provided* that,
with respect to any proposed change in the
corporation about which Defendants learn less than
thirty (30) days prior to the date such action is
to take place, Defendants shall notify the
Commission as soon as is practicable after
obtaining such knowledge;

B.    One hundred eighty (180) days after the date of entry
of this Order, Defendants each shall provide a written report to
the FTC, sworn to under penalty of perjury, setting forth in
detail the manner and form in which they have complied and are
complying with this Order.  This report shall include, but not be
limited to:

1.    For Defendant Chris Sommer:

a.    His then-current residence address, mailing
addresses, and telephone numbers;

b.    His then-current employment and business
addresses and telephone numbers, a
description of the business activities of
each such employer or business, and his title
and responsibilities for each such employer
or business; and

c.   Any other changes required to be reported
under subparagraph A of this Section; and

2.   For all Defendants:

a.   A copy of each acknowledgment of receipt of
this Order, obtained pursuant to Part VII.C
of this Order; and

b.   Any changes required to be reported pursuant
to subsection A of this Part;

C.   For the purposes of this Order, Defendants shall,
unless otherwise directed in writing by the Commission's
authorized representatives, mail all written notifications to the
Commission to:

        Associate Director for the
        Division of Enforcement
        Federal Trade Commission
        601 New Jersey Avenue, N.W.
        Washington, D.C.  20580
        Re:  United States v. Member Source Media LLC
        Case No. _____;

D.   For the purposes of this Order, Defendants shall,
unless otherwise directed in writing by a representative of
Plaintiff, identify all written notifications required to be sent
to Plaintiff as in reference to DJ# 102-3436, and mail them to:

        Director, Office of Consumer Litigation
        U.S. Department of Justice - Civil Division
        P.O. Box 386
        Washington, D.C.  20044; and

E.   For purposes of the compliance reporting and monitoring
required by this Order, representatives of Plaintiff and the
Commission are authorized to communicate directly with
Defendants.

## VI.  RECORD KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of eight (8) years from the date of entry of this Order, Defendants and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records in connection with the marketing, advertising, or promotion of any "free" products or services:

A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement  of such revenues;

B.    Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts  paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.    Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests; and

E.    Copies of all sales scripts, training materials, advertisements, or other marketing materials;

F.    Records demonstrating reasonable policies and procedures to process and handle customer inquiries and complaints; and

G.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by Part VIII, and all reports submitted to the FTC pursuant to Part V of this Order.

### VII.   DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of this Order as directed below:

A.    Defendant Member Source Media LLC must deliver a copy of this Order to all of its principals, officers, directors, and managers.  Defendant Member Source Media LLC also must deliver copies of this Order to all of its employees, agents, and representatives who engage in conduct related to the subject matter of this Order.  For current personnel, delivery shall be within (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

B.    For any business that Defendant Chris Sommer controls, directly or indirectly, or in which Defendant Chris Sommer has a majority ownership interest, Defendant Chris Sommer must deliver a copy of this Order to all principals, officers, directors, and

1  managers of that business.  Defendant Chris Sommer must also
2  deliver copies of this Order to all employees, agents, and
3  representatives of that business who engage in conduct related to
4  the subject matter of this Order.  For current personnel,
5  delivery shall be within (5) days of service of this Order upon
6  Defendants.  For new personnel, delivery shall occur prior to
7  them assuming their responsibilities; and

8      C.    Defendants must secure a signed and dated statement
9  acknowledging receipt of this Order, within thirty (30) days of
10  delivery, from all persons receiving a copy of this Order
11  pursuant to this Part.

12      **VIII.   ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS**

13      IT IS FURTHER ORDERED that each defendant, within five (5)
14  business days of receipt of this Order as entered by the Court,
15  must submit to the Commission a truthful sworn statement
16  acknowledging receipt of this Order.

17                     **IX.   FEES AND COSTS**

18      IT IS FURTHER ORDERED that each party to this Order hereby
19  agrees to bear its own costs and attorneys' fees incurred in
20  connection with this action.

21                     **X.   SEVERABILITY**

22      IT IS FURTHER ORDERED that the provisions of this Order are
23  separate and severable from one another.  If any provision is
24  stayed or determined to be invalid, the remaining provisions
25  shall remain in full force and effect.

26                **XI.   RETENTION OF JURISDICTION**

27      IT IS FURTHER ORDERED that this Court shall retain

28

1  jurisdiction of this matter for purposes of construction,

2  modification, and enforcement of this Order.

3  **XII.  COMPLETE SETTLEMENT**

4      The parties, by their respective counsel, hereby consent to

5  entry of the foregoing Order, which shall constitute a final

6  judgment and order in this matter.  The parties further stipulate

7  and agree that the entry of the foregoing Order shall constitute

8  full, complete, and final settlement of this action.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  FOR THE PLAINTIFF:

2  UNITED STATES OF AMERICA:

3  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
4  Civil Division
   U.S. Department of Justice
5
   EUGENE M. THIROLF
6  Director,
   KENNETH L. JOST
7  Deputy Director,
   Office of Consumer Litigation
8
             /s/
9  JOHN W. BURKE (VA. BAR NO. 72780)
   Trial Attorney
10 Office of Consumer Litigation
   Civil Division
11 U.S. Department of Justice
   P.O. Box 386
12 Washington, D.C. 20044
   Telephone: 202-353-2001
13 Facsimile: 202-514-8742
   Email: josh.burke@usdoj.gov
14
   FOR THE FEDERAL TRADE COMMISSION:
15
             /s/
16 LOIS C. GREISMAN
   Associate Director for Marketing Practices
17

18
             /s/
19 STEPHEN L. COHEN
   ETHAN ARENSON
20 Attorneys, Federal Trade Commission
   600 Pennsylvania Ave., N.W.
21 Washington, D.C.  20580

22

23

24

25

26

27

28

1  FOR THE DEFENDANTS:

2

3  _____/s/_____
   Jeffrey K. Riffer
   Jeffer Mangers Butler & Marmaro LLP
4  1900 Avenue of the Stars, 7th Floor
   Los Angeles, CA 90067
5  _____

6  Member Source Media LLC
   BY:_____/s/_____
7
   204 East 2nd Avenue, Suite 517
8  San Mateo, CA 94401

9
   _____/s/_____
10 Chris Sommer,
   Individually and as Manager of Member Source Media LLC
11

12       **SO ORDERED**  this _____ day of _____, 2008.

13

14                              _____
                                United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Stip. Final Judgment

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2699

Public Law 108–187
108th Congress

## An Act

To regulate interstate commerce by imposing limitations and penalties on the trans-
mission of unsolicited commercial electronic mail via the Internet.

*Be it enacted by the Senate and House of Representatives of
the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Controlling the Assault of Non-
Solicited Pornography and Marketing Act of 2003", or the "CAN-
SPAM Act of 2003".

**SEC. 2. CONGRESSIONAL FINDINGS AND POLICY.**

(a) FINDINGS.—The Congress finds the following:

(1) Electronic mail has become an extremely important
and popular means of communication, relied on by millions
of Americans on a daily basis for personal and commercial
purposes. Its low cost and global reach make it extremely
convenient and efficient, and offer unique opportunities for
the development and growth of frictionless commerce.

(2) The convenience and efficiency of electronic mail are
threatened by the extremely rapid growth in the volume of
unsolicited commercial electronic mail. Unsolicited commercial
electronic mail is currently estimated to account for over half
of all electronic mail traffic, up from an estimated 7 percent
in 2001, and the volume continues to rise. Most of these mes-
sages are fraudulent or deceptive in one or more respects.

(3) The receipt of unsolicited commercial electronic mail
may result in costs to recipients who cannot refuse to accept
such mail and who incur costs for the storage of such mail,
or for the time spent accessing, reviewing, and discarding such
mail, or for both.

(4) The receipt of a large number of unwanted messages
also decreases the convenience of electronic mail and creates
a risk that wanted electronic mail messages, both commercial
and noncommercial, will be lost, overlooked, or discarded amidst
the larger volume of unwanted messages, thus reducing the
reliability and usefulness of electronic mail to the recipient.

(5) Some commercial electronic mail contains material that
many recipients may consider vulgar or pornographic in nature.

(6) The growth in unsolicited commercial electronic mail
imposes significant monetary costs on providers of Internet
access services, businesses, and educational and nonprofit
institutions that carry and receive such mail, as there is a
finite volume of mail that such providers, businesses, and

Dec. 16, 2003
[S. 877]

Controlling the
Assault of Non-
Solicited
Pornography and
Marketing Act of
2003.
15 USC 7701
note.

15 USC 7701.

institutions can handle without further investment in infrastructure.

(7) Many senders of unsolicited commercial electronic mail purposefully disguise the source of such mail.

(8) Many senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages.

(9) While some senders of commercial electronic mail messages provide simple and reliable ways for recipients to reject (or "opt-out" of) receipt of commercial electronic mail from such senders in the future, other senders provide no such "opt-out" mechanism, or refuse to honor the requests of recipients not to receive electronic mail from such senders in the future, or both.

(10) Many senders of bulk unsolicited commercial electronic mail use computer programs to gather large numbers of electronic mail addresses on an automated basis from Internet websites or online services where users must post their addresses in order to make full use of the website or service.

(11) Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

(12) The problems associated with the rapid growth and abuse of unsolicited commercial electronic mail cannot be solved by Federal legislation alone. The development and adoption of technological approaches and the pursuit of cooperative efforts with other countries will be necessary as well.

(b) CONGRESSIONAL DETERMINATION OF PUBLIC POLICY.—On the basis of the findings in subsection (a), the Congress determines that—

(1) there is a substantial government interest in regulation of commercial electronic mail on a nationwide basis;

(2) senders of commercial electronic mail should not mislead recipients as to the source or content of such mail; and

(3) recipients of commercial electronic mail have a right to decline to receive additional commercial electronic mail from the same source.

15 USC 7702.    **SEC. 3. DEFINITIONS.**

In this Act:

(1) AFFIRMATIVE CONSENT.—The term "affirmative consent", when used with respect to a commercial electronic mail message, means that—

(A) the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative; and

(B) if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2701

the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating commercial electronic mail messages.

(2) COMMERCIAL ELECTRONIC MAIL MESSAGE.—

(A) IN GENERAL.—The term "commercial electronic mail message" means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose).

(B) TRANSACTIONAL OR RELATIONSHIP MESSAGES.—The term "commercial electronic mail message" does not include a transactional or relationship message.

(C) REGULATIONS REGARDING PRIMARY PURPOSE.—Not later than 12 months after the date of the enactment of this Act, the Commission shall issue regulations pursuant to section 13 defining the relevant criteria to facilitate the determination of the primary purpose of an electronic mail message.

Deadline.

(D) REFERENCE TO COMPANY OR WEBSITE.—The inclusion of a reference to a commercial entity or a link to the website of a commercial entity in an electronic mail message does not, by itself, cause such message to be treated as a commercial electronic mail message for purposes of this Act if the contents or circumstances of the message indicate a primary purpose other than commercial advertisement or promotion of a commercial product or service.

(3) COMMISSION.—The term "Commission" means the Federal Trade Commission.

(4) DOMAIN NAME.—The term "domain name" means any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet.

(5) ELECTRONIC MAIL ADDRESS.—The term "electronic mail address" means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered.

(6) ELECTRONIC MAIL MESSAGE.—The term "electronic mail message" means a message sent to a unique electronic mail address.

(7) FTC ACT.—The term "FTC Act" means the Federal Trade Commission Act (15 U.S.C. 41 et seq.).

(8) HEADER INFORMATION.—The term "header information" means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.

(9) INITIATE.—The term "initiate", when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or

transmission of such message, but shall not include actions that constitute routine conveyance of such message. For purposes of this paragraph, more than one person may be considered to have initiated a message.

(10) INTERNET.—The term "Internet" has the meaning given that term in the Internet Tax Freedom Act (47 U.S.C. 151 nt).

(11) INTERNET ACCESS SERVICE.—The term "Internet access service" has the meaning given that term in section 231(e)(4) of the Communications Act of 1934 (47 U.S.C. 231(e)(4)).

(12) PROCURE.—The term "procure", when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf.

(13) PROTECTED COMPUTER.—The term "protected computer" has the meaning given that term in section 1030(e)(2)(B) of title 18, United States Code.

(14) RECIPIENT.—The term "recipient", when used with respect to a commercial electronic mail message, means an authorized user of the electronic mail address to which the message was sent or delivered. If a recipient of a commercial electronic mail message has one or more electronic mail addresses in addition to the address to which the message was sent or delivered, the recipient shall be treated as a separate recipient with respect to each such address. If an electronic mail address is reassigned to a new user, the new user shall not be treated as a recipient of any commercial electronic mail message sent or delivered to that address before it was reassigned.

(15) ROUTINE CONVEYANCE.—The term "routine conveyance" means the transmission, routing, relaying, handling, or storing, through an automatic technical process, of an electronic mail message for which another person has identified the recipients or provided the recipient addresses.

(16) SENDER.—

(A) IN GENERAL.—Except as provided in subparagraph (B), the term "sender", when used with respect to a commercial electronic mail message, means a person who initiates such a message and whose product, service, or Internet web site is advertised or promoted by the message.

(B) SEPARATE LINES OF BUSINESS OR DIVISIONS.—If an entity operates through separate lines of business or divisions and holds itself out to the recipient throughout the message as that particular line of business or division rather than as the entity of which such line of business or division is a part, then the line of business or the division shall be treated as the sender of such message for purposes of this Act.

(17) TRANSACTIONAL OR RELATIONSHIP MESSAGE.—

(A) IN GENERAL.—The term "transactional or relationship message" means an electronic mail message the primary purpose of which is—

(i) to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender;

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2703

(ii) to provide warranty information, product recall information, or safety or security information with respect to a commercial product or service used or purchased by the recipient;

(iii) to provide—

(I) notification concerning a change in the terms or features of;

(II) notification of a change in the recipient's standing or status with respect to; or

(III) at regular periodic intervals, account balance information or other type of account statement with respect to,

a subscription, membership, account, loan, or comparable ongoing commercial relationship involving the ongoing purchase or use by the recipient of products or services offered by the sender;

(iv) to provide information directly related to an employment relationship or related benefit plan in which the recipient is currently involved, participating, or enrolled; or

(v) to deliver goods or services, including product updates or upgrades, that the recipient is entitled to receive under the terms of a transaction that the recipient has previously agreed to enter into with the sender.

(B) MODIFICATION OF DEFINITION.—The Commission by regulation pursuant to section 13 may modify the definition in subparagraph (A) to expand or contract the categories of messages that are treated as transactional or relationship messages for purposes of this Act to the extent that such modification is necessary to accommodate changes in electronic mail technology or practices and accomplish the purposes of this Act.

**SEC. 4. PROHIBITION AGAINST PREDATORY AND ABUSIVE COMMERCIAL E-MAIL.**

15 USC 7703.

(a) OFFENSE.—

(1) IN GENERAL.—Chapter 47 of title 18, United States Code, is amended by adding at the end the following new section:

**"§ 1037. Fraud and related activity in connection with electronic mail**

"(a) IN GENERAL.—Whoever, in or affecting interstate or foreign commerce, knowingly—

"(1) accesses a protected computer without authorization, and intentionally initiates the transmission of multiple commercial electronic mail messages from or through such computer,

"(2) uses a protected computer to relay or retransmit multiple commercial electronic mail messages, with the intent to deceive or mislead recipients, or any Internet access service, as to the origin of such messages,

"(3) materially falsifies header information in multiple commercial electronic mail messages and intentionally initiates the transmission of such messages,

"(4) registers, using information that materially falsifies the identity of the actual registrant, for five or more electronic

PUBLIC LAW 108–187—DEC. 16, 2003

mail accounts or online user accounts or two or more domain names, and intentionally initiates the transmission of multiple commercial electronic mail messages from any combination of such accounts or domain names, or

"(5) falsely represents oneself to be the registrant or the legitimate successor in interest to the registrant of 5 or more Internet Protocol addresses, and intentionally initiates the transmission of multiple commercial electronic mail messages from such addresses,

or conspires to do so, shall be punished as provided in subsection (b).

"(b) PENALTIES.—The punishment for an offense under subsection (a) is—

"(1) a fine under this title, imprisonment for not more than 5 years, or both, if—

"(A) the offense is committed in furtherance of any felony under the laws of the United States or of any State; or

"(B) the defendant has previously been convicted under this section or section 1030, or under the law of any State for conduct involving the transmission of multiple commercial electronic mail messages or unauthorized access to a computer system;

"(2) a fine under this title, imprisonment for not more than 3 years, or both, if—

"(A) the offense is an offense under subsection (a)(1);

"(B) the offense is an offense under subsection (a)(4) and involved 20 or more falsified electronic mail or online user account registrations, or 10 or more falsified domain name registrations;

"(C) the volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, or 250,000 during any 1-year period;

"(D) the offense caused loss to one or more persons aggregating $5,000 or more in value during any 1-year period;

"(E) as a result of the offense any individual committing the offense obtained anything of value aggregating $5,000 or more during any 1-year period; or

"(F) the offense was undertaken by the defendant in concert with three or more other persons with respect to whom the defendant occupied a position of organizer or leader; and

"(3) a fine under this title or imprisonment for not more than 1 year, or both, in any other case.

"(c) FORFEITURE.—

Courts.    "(1) IN GENERAL.—The court, in imposing sentence on a person who is convicted of an offense under this section, shall order that the defendant forfeit to the United States—

"(A) any property, real or personal, constituting or traceable to gross proceeds obtained from such offense; and

"(B) any equipment, software, or other technology used or intended to be used to commit or to facilitate the commission of such offense.

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2705

"(2) PROCEDURES.—The procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. 853), other than subsection (d) of that section, and in Rule 32.2 of the Federal Rules of Criminal Procedure, shall apply to all stages of a criminal forfeiture proceeding under this section.

Applicability.

"(d) DEFINITIONS.—In this section:
"(1) LOSS.—The term 'loss' has the meaning given that term in section 1030(e) of this title.
"(2) MATERIALLY.—For purposes of paragraphs (3) and (4) of subsection (a), header information or registration information is materially falsified if it is altered or concealed in a manner that would impair the ability of a recipient of the message, an Internet access service processing the message on behalf of a recipient, a person alleging a violation of this section, or a law enforcement agency to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation.
"(3) MULTIPLE.—The term 'multiple' means more than 100 electronic mail messages during a 24-hour period, more than 1,000 electronic mail messages during a 30-day period, or more than 10,000 electronic mail messages during a 1-year period.
"(4) OTHER TERMS.—Any other term has the meaning given that term by section 3 of the CAN-SPAM Act of 2003.".

(2) CONFORMING AMENDMENT.—The chapter analysis for chapter 47 of title 18, United States Code, is amended by adding at the end the following:

"Sec.
"1037. Fraud and related activity in connection with electronic mail.".

(b) UNITED STATES SENTENCING COMMISSION.—

28 USC 994 note.

(1) DIRECTIVE.—Pursuant to its authority under section 994(p) of title 28, United States Code, and in accordance with this section, the United States Sentencing Commission shall review and, as appropriate, amend the sentencing guidelines and policy statements to provide appropriate penalties for violations of section 1037 of title 18, United States Code, as added by this section, and other offenses that may be facilitated by the sending of large quantities of unsolicited electronic mail.
(2) REQUIREMENTS.—In carrying out this subsection, the Sentencing Commission shall consider providing sentencing enhancements for—
(A) those convicted under section 1037 of title 18, United States Code, who—
(i) obtained electronic mail addresses through improper means, including—
(I) harvesting electronic mail addresses of the users of a website, proprietary service, or other online public forum operated by another person, without the authorization of such person; and
(II) randomly generating electronic mail addresses by computer; or
(ii) knew that the commercial electronic mail messages involved in the offense contained or advertised an Internet domain for which the registrant of the domain had provided false registration information; and

(B) those convicted of other offenses, including offenses involving fraud, identity theft, obscenity, child pornography, and the sexual exploitation of children, if such offenses involved the sending of large quantities of electronic mail.

(c) SENSE OF CONGRESS.—It is the sense of Congress that—

(1) Spam has become the method of choice for those who distribute pornography, perpetrate fraudulent schemes, and introduce viruses, worms, and Trojan horses into personal and business computer systems; and

(2) the Department of Justice should use all existing law enforcement tools to investigate and prosecute those who send bulk commercial e-mail to facilitate the commission of Federal crimes, including the tools contained in chapters 47 and 63 of title 18, United States Code (relating to fraud and false statements); chapter 71 of title 18, United States Code (relating to obscenity); chapter 110 of title 18, United States Code (relating to the sexual exploitation of children); and chapter 95 of title 18, United States Code (relating to racketeering), as appropriate.

15 USC 7704.    **SEC. 5. OTHER PROTECTIONS FOR USERS OF COMMERCIAL ELECTRONIC MAIL.**

(a) REQUIREMENTS FOR TRANSMISSION OF MESSAGES.—

(1) PROHIBITION OF FALSE OR MISLEADING TRANSMISSION INFORMATION.—It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading. For purposes of this paragraph—

(A) header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading;

(B) a "from" line (the line identifying or purporting to identify a person initiating the message) that accurately identifies any person who initiated the message shall not be considered materially false or materially misleading; and

(C) header information shall be considered materially misleading if it fails to identify accurately a protected computer used to initiate the message because the person initiating the message knowingly uses another protected computer to relay or retransmit the message for purposes of disguising its origin.

(2) PROHIBITION OF DECEPTIVE SUBJECT HEADINGS.—It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact

PUBLIC LAW 108–187—DEC. 16, 2003        117 STAT. 2707

regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 5 of the Federal Trade Commission Act (15 U.S.C. 45)).

(3) INCLUSION OF RETURN ADDRESS OR COMPARABLE MECHANISM IN COMMERCIAL ELECTRONIC MAIL.—

(A) IN GENERAL.—It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message that does not contain a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that—

(i) a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and

(ii) remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message.

(B) MORE DETAILED OPTIONS POSSIBLE.—The person initiating a commercial electronic mail message may comply with subparagraph (A)(i) by providing the recipient a list or menu from which the recipient may choose the specific types of commercial electronic mail messages the recipient wants to receive or does not want to receive from the sender, if the list or menu includes an option under which the recipient may choose not to receive any commercial electronic mail messages from the sender.

(C) TEMPORARY INABILITY TO RECEIVE MESSAGES OR PROCESS REQUESTS.—A return electronic mail address or other mechanism does not fail to satisfy the requirements of subparagraph (A) if it is unexpectedly and temporarily unable to receive messages or process requests due to a technical problem beyond the control of the sender if the problem is corrected within a reasonable time period.

(4) PROHIBITION OF TRANSMISSION OF COMMERCIAL ELECTRONIC MAIL AFTER OBJECTION.—

(A) IN GENERAL.—If a recipient makes a request using a mechanism provided pursuant to paragraph (3) not to receive some or any commercial electronic mail messages from such sender, then it is unlawful—

(i) for the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message that falls within the scope of the request;

(ii) for any person acting on behalf of the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that such message falls within the scope of the request;

(iii) for any person acting on behalf of the sender to assist in initiating the transmission to the recipient, through the provision or selection of addresses to which the message will be sent, of a commercial electronic

mail message with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that such message would violate clause (i) or (ii); or

(iv) for the sender, or any other person who knows that the recipient has made such a request, to sell, lease, exchange, or otherwise transfer or release the electronic mail address of the recipient (including through any transaction or other transfer involving mailing lists bearing the electronic mail address of the recipient) for any purpose other than compliance with this Act or other provision of law.

(B) SUBSEQUENT AFFIRMATIVE CONSENT.—A prohibition in subparagraph (A) does not apply if there is affirmative consent by the recipient subsequent to the request under subparagraph (A).

(5) INCLUSION OF IDENTIFIER, OPT-OUT, AND PHYSICAL ADDRESS IN COMMERCIAL ELECTRONIC MAIL.—(A) It is unlawful for any person to initiate the transmission of any commercial electronic mail message to a protected computer unless the message provides—

(i) clear and conspicuous identification that the message is an advertisement or solicitation;

(ii) clear and conspicuous notice of the opportunity under paragraph (3) to decline to receive further commercial electronic mail messages from the sender; and

(iii) a valid physical postal address of the sender.

(B) Subparagraph (A)(i) does not apply to the transmission of a commercial electronic mail message if the recipient has given prior affirmative consent to receipt of the message.

(6) MATERIALLY.—For purposes of paragraph (1), the term "materially", when used with respect to false or misleading header information, includes the alteration or concealment of header information in a manner that would impair the ability of an Internet access service processing the message on behalf of a recipient, a person alleging a violation of this section, or a law enforcement agency to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation, or the ability of a recipient of the message to respond to a person who initiated the electronic message.

(b) AGGRAVATED VIOLATIONS RELATING TO COMMERCIAL ELECTRONIC MAIL.—

(1) ADDRESS HARVESTING AND DICTIONARY ATTACKS.—

(A) IN GENERAL.—It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message that is unlawful under subsection (a), or to assist in the origination of such message through the provision or selection of addresses to which the message will be transmitted, if such person had actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that—

(i) the electronic mail address of the recipient was obtained using an automated means from an Internet website or proprietary online service operated by another person, and such website or online service included, at the time the address was obtained, a notice stating that the operator of such website or online

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2709

service will not give, sell, or otherwise transfer addresses maintained by such website or online service to any other party for the purposes of initiating, or enabling others to initiate, electronic mail messages; or

(ii) the electronic mail address of the recipient was obtained using an automated means that generates possible electronic mail addresses by combining names, letters, or numbers into numerous permutations.

(B) DISCLAIMER.—Nothing in this paragraph creates an ownership or proprietary interest in such electronic mail addresses.

(2) AUTOMATED CREATION OF MULTIPLE ELECTRONIC MAIL ACCOUNTS.—It is unlawful for any person to use scripts or other automated means to register for multiple electronic mail accounts or online user accounts from which to transmit to a protected computer, or enable another person to transmit to a protected computer, a commercial electronic mail message that is unlawful under subsection (a).

(3) RELAY OR RETRANSMISSION THROUGH UNAUTHORIZED ACCESS.—It is unlawful for any person knowingly to relay or retransmit a commercial electronic mail message that is unlawful under subsection (a) from a protected computer or computer network that such person has accessed without authorization.

(c) SUPPLEMENTARY RULEMAKING AUTHORITY.—The Commission shall by regulation, pursuant to section 13—

(1) modify the 10-business-day period under subsection (a)(4)(A) or subsection (a)(4)(B), or both, if the Commission determines that a different period would be more reasonable after taking into account—

(A) the purposes of subsection (a);

(B) the interests of recipients of commercial electronic mail; and

(C) the burdens imposed on senders of lawful commercial electronic mail; and

(2) specify additional activities or practices to which subsection (b) applies if the Commission determines that those activities or practices are contributing substantially to the proliferation of commercial electronic mail messages that are unlawful under subsection (a).

(d) REQUIREMENT TO PLACE WARNING LABELS ON COMMERCIAL ELECTRONIC MAIL CONTAINING SEXUALLY ORIENTED MATERIAL.—

(1) IN GENERAL.—No person may initiate in or affecting interstate commerce the transmission, to a protected computer, of any commercial electronic mail message that includes sexually oriented material and—

(A) fail to include in subject heading for the electronic mail message the marks or notices prescribed by the Commission under this subsection; or

(B) fail to provide that the matter in the message that is initially viewable to the recipient, when the message is opened by any recipient and absent any further actions by the recipient, includes only—

(i) to the extent required or authorized pursuant to paragraph (2), any such marks or notices;

(ii) the information required to be included in the message pursuant to subsection (a)(5); and

(iii) instructions on how to access, or a mechanism to access, the sexually oriented material.

(2) PRIOR AFFIRMATIVE CONSENT.—Paragraph (1) does not apply to the transmission of an electronic mail message if the recipient has given prior affirmative consent to receipt of the message.

Deadline.

(3) PRESCRIPTION OF MARKS AND NOTICES.—Not later than 120 days after the date of the enactment of this Act, the Commission in consultation with the Attorney General shall prescribe clearly identifiable marks or notices to be included in or associated with commercial electronic mail that contains sexually oriented material, in order to inform the recipient of that fact and to facilitate filtering of such electronic mail.

Federal Register, publication.

The Commission shall publish in the Federal Register and provide notice to the public of the marks or notices prescribed under this paragraph.

(4) DEFINITION.—In this subsection, the term "sexually oriented material" means any material that depicts sexually explicit conduct (as that term is defined in section 2256 of title 18, United States Code), unless the depiction constitutes a small and insignificant part of the whole, the remainder of which is not primarily devoted to sexual matters.

(5) PENALTY.—Whoever knowingly violates paragraph (1) shall be fined under title 18, United States Code, or imprisoned not more than 5 years, or both.

15 USC 7705.

**SEC. 6. BUSINESSES KNOWINGLY PROMOTED BY ELECTRONIC MAIL WITH FALSE OR MISLEADING TRANSMISSION INFORMATION.**

(a) IN GENERAL.—It is unlawful for a person to promote, or allow the promotion of, that person's trade or business, or goods, products, property, or services sold, offered for sale, leased or offered for lease, or otherwise made available through that trade or business, in a commercial electronic mail message the transmission of which is in violation of section 5(a)(1) if that person—

(1) knows, or should have known in the ordinary course of that person's trade or business, that the goods, products, property, or services sold, offered for sale, leased or offered for lease, or otherwise made available through that trade or business were being promoted in such a message;

(2) received or expected to receive an economic benefit from such promotion; and

(3) took no reasonable action—

(A) to prevent the transmission; or

(B) to detect the transmission and report it to the Commission.

(b) LIMITED ENFORCEMENT AGAINST THIRD PARTIES.—

(1) IN GENERAL.—Except as provided in paragraph (2), a person (hereinafter referred to as the "third party") that provides goods, products, property, or services to another person that violates subsection (a) shall not be held liable for such violation.

(2) EXCEPTION.—Liability for a violation of subsection (a) shall be imputed to a third party that provides goods, products, property, or services to another person that violates subsection (a) if that third party—

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2711

(A) owns, or has a greater than 50 percent ownership or economic interest in, the trade or business of the person that violated subsection (a); or

(B)(i) has actual knowledge that goods, products, property, or services are promoted in a commercial electronic mail message the transmission of which is in violation of section 5(a)(1); and

(ii) receives, or expects to receive, an economic benefit from such promotion.

(c) EXCLUSIVE ENFORCEMENT BY FTC.—Subsections (f) and (g) of section 7 do not apply to violations of this section.

(d) SAVINGS PROVISION.—Except as provided in section 7(f)(8), nothing in this section may be construed to limit or prevent any action that may be taken under this Act with respect to any violation of any other section of this Act.

**SEC. 7. ENFORCEMENT GENERALLY.**                                    15 USC 7706.

(a) VIOLATION IS UNFAIR OR DECEPTIVE ACT OR PRACTICE.—Except as provided in subsection (b), this Act shall be enforced by the Commission as if the violation of this Act were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the Federal Trade Commission Act (15 U.S.C. 57a(a)(1)(B)).

(b) ENFORCEMENT BY CERTAIN OTHER AGENCIES.—Compliance with this Act shall be enforced—

(1) under section 8 of the Federal Deposit Insurance Act (12 U.S.C. 1818), in the case of—

(A) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, organizations operating under section 25 or 25A of the Federal Reserve Act (12 U.S.C. 601 and 611), and bank holding companies, by the Board;

(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation; and

(D) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision;

(2) under the Federal Credit Union Act (12 U.S.C. 1751 et seq.) by the Board of the National Credit Union Administration with respect to any Federally insured credit union;

(3) under the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) by the Securities and Exchange Commission with respect to any broker or dealer;

(4) under the Investment Company Act of 1940 (15 U.S.C. 80a–1 et seq.) by the Securities and Exchange Commission with respect to investment companies;

(5) under the Investment Advisers Act of 1940 (15 U.S.C. 80b–1 et seq.) by the Securities and Exchange Commission with respect to investment advisers registered under that Act;

(6) under State insurance law in the case of any person engaged in providing insurance, by the applicable State insurance authority of the State in which the person is domiciled, subject to section 104 of the Gramm-Bliley-Leach Act (15 U.S.C. 6701), except that in any State in which the State insurance authority elects not to exercise this power, the enforcement authority pursuant to this Act shall be exercised by the Commission in accordance with subsection (a);

(7) under part A of subtitle VII of title 49, United States Code, by the Secretary of Transportation with respect to any air carrier or foreign air carrier subject to that part;

(8) under the Packers and Stockyards Act, 1921 (7 U.S.C. 181 et seq.) (except as provided in section 406 of that Act (7 U.S.C. 226, 227)), by the Secretary of Agriculture with respect to any activities subject to that Act;

(9) under the Farm Credit Act of 1971 (12 U.S.C. 2001 et seq.) by the Farm Credit Administration with respect to any Federal land bank, Federal land bank association, Federal intermediate credit bank, or production credit association; and

(10) under the Communications Act of 1934 (47 U.S.C. 151 et seq.) by the Federal Communications Commission with respect to any person subject to the provisions of that Act.

(c) EXERCISE OF CERTAIN POWERS.—For the purpose of the exercise by any agency referred to in subsection (b) of its powers under any Act referred to in that subsection, a violation of this Act is deemed to be a violation of a Federal Trade Commission trade regulation rule. In addition to its powers under any provision of law specifically referred to in subsection (b), each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this Act, any other authority conferred on it by law.

(d) ACTIONS BY THE COMMISSION.—The Commission shall prevent any person from violating this Act in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this Act. Any entity that violates any provision of that subtitle is subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act in the same manner, by the same means, and with the same jurisdiction, power, and duties as though all applicable terms and provisions of the Federal Trade Commission Act were incorporated into and made a part of that subtitle.

(e) AVAILABILITY OF CEASE-AND-DESIST ORDERS AND INJUNCTIVE RELIEF WITHOUT SHOWING OF KNOWLEDGE.—Notwithstanding any other provision of this Act, in any proceeding or action pursuant to subsection (a), (b), (c), or (d) of this section to enforce compliance, through an order to cease and desist or an injunction, with section 5(a)(1)(C), section 5(a)(2), clause (ii), (iii), or (iv) of section 5(a)(4)(A), section 5(b)(1)(A), or section 5(b)(3), neither the Commission nor the Federal Communications Commission shall be required to allege or prove the state of mind required by such section or subparagraph.

(f) ENFORCEMENT BY STATES.—

(1) CIVIL ACTION.—In any case in which the attorney general of a State, or an official or agency of a State, has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2713

violates paragraph (1) or (2) of section 5(a), who violates section 5(d), or who engages in a pattern or practice that violates paragraph (3), (4), or (5) of section 5(a), of this Act, the attorney general, official, or agency of the State, as parens patriae, may bring a civil action on behalf of the residents of the State in a district court of the United States of appropriate jurisdiction—

    (A) to enjoin further violation of section 5 of this Act by the defendant; or

    (B) to obtain damages on behalf of residents of the State, in an amount equal to the greater of—

        (i) the actual monetary loss suffered by such residents; or

        (ii) the amount determined under paragraph (3).

    (2) AVAILABILITY OF INJUNCTIVE RELIEF WITHOUT SHOWING OF KNOWLEDGE.—Notwithstanding any other provision of this Act, in a civil action under paragraph (1)(A) of this subsection, the attorney general, official, or agency of the State shall not be required to allege or prove the state of mind required by section 5(a)(1)(C), section 5(a)(2), clause (ii), (iii), or (iv) of section 5(a)(4)(A), section 5(b)(1)(A), or section 5(b)(3).

    (3) STATUTORY DAMAGES.—

        (A) IN GENERAL.—For purposes of paragraph (1)(B)(ii), the amount determined under this paragraph is the amount calculated by multiplying the number of violations (with each separately addressed unlawful message received by or addressed to such residents treated as a separate violation) by up to $250.

        (B) LIMITATION.—For any violation of section 5 (other than section 5(a)(1)), the amount determined under subparagraph (A) may not exceed $2,000,000.

        (C) AGGRAVATED DAMAGES.—The court may increase a damage award to an amount equal to not more than three times the amount otherwise available under this paragraph if—

            (i) the court determines that the defendant committed the violation willfully and knowingly; or

            (ii) the defendant's unlawful activity included one or more of the aggravating violations set forth in section 5(b).

        (D) REDUCTION OF DAMAGES.—In assessing damages under subparagraph (A), the court may consider whether—

            (i) the defendant has established and implemented, with due care, commercially reasonable practices and procedures designed to effectively prevent such violations; or

            (ii) the violation occurred despite commercially reasonable efforts to maintain compliance the practices and procedures to which reference is made in clause (i).

    (4) ATTORNEY FEES.—In the case of any successful action under paragraph (1), the court, in its discretion, may award the costs of the action and reasonable attorney fees to the State.

    (5) RIGHTS OF FEDERAL REGULATORS.—The State shall serve prior written notice of any action under paragraph (1) upon

Notice.
Records.

the Federal Trade Commission or the appropriate Federal regulator determined under subsection (b) and provide the Commission or appropriate Federal regulator with a copy of its complaint, except in any case in which such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action. The Federal Trade Commission or appropriate Federal regulator shall have the right—

    (A) to intervene in the action;

    (B) upon so intervening, to be heard on all matters arising therein;

    (C) to remove the action to the appropriate United States district court; and

    (D) to file petitions for appeal.

    (6) CONSTRUCTION.—For purposes of bringing any civil action under paragraph (1), nothing in this Act shall be construed to prevent an attorney general of a State from exercising the powers conferred on the attorney general by the laws of that State to—

    (A) conduct investigations;

    (B) administer oaths or affirmations; or

    (C) compel the attendance of witnesses or the production of documentary and other evidence.

    (7) VENUE; SERVICE OF PROCESS.—

    (A) VENUE.—Any action brought under paragraph (1) may be brought in the district court of the United States that meets applicable requirements relating to venue under section 1391 of title 28, United States Code.

    (B) SERVICE OF PROCESS.—In an action brought under paragraph (1), process may be served in any district in which the defendant—

        (i) is an inhabitant; or

        (ii) maintains a physical place of business.

    (8) LIMITATION ON STATE ACTION WHILE FEDERAL ACTION IS PENDING.—If the Commission, or other appropriate Federal agency under subsection (b), has instituted a civil action or an administrative action for violation of this Act, no State attorney general, or official or agency of a State, may bring an action under this subsection during the pendency of that action against any defendant named in the complaint of the Commission or the other agency for any violation of this Act alleged in the complaint.

    (9) REQUISITE SCIENTER FOR CERTAIN CIVIL ACTIONS.—Except as provided in section 5(a)(1)(C), section 5(a)(2), clause (ii), (iii), or (iv) of section 5(a)(4)(A), section 5(b)(1)(A), or section 5(b)(3), in a civil action brought by a State attorney general, or an official or agency of a State, to recover monetary damages for a violation of this Act, the court shall not grant the relief sought unless the attorney general, official, or agency establishes that the defendant acted with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, of the act or omission that constitutes the violation.

(g) ACTION BY PROVIDER OF INTERNET ACCESS SERVICE.—

    (1) ACTION AUTHORIZED.—A provider of Internet access service adversely affected by a violation of section 5(a)(1), 5(b), or 5(d), or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 5(a), may bring a civil action in

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2715

any district court of the United States with jurisdiction over
the defendant—
> (A) to enjoin further violation by the defendant; or
> (B) to recover damages in an amount equal to the
> greater of—
>> (i) actual monetary loss incurred by the provider
>> of Internet access service as a result of such violation;
>> or
>>
>> (ii) the amount determined under paragraph (3).

(2) SPECIAL DEFINITION OF "PROCURE".—In any action
brought under paragraph (1), this Act shall be applied as if
the definition of the term "procure" in section 3(12) contained,
after "behalf" the words "with actual knowledge, or by con-
sciously avoiding knowing, whether such person is engaging,
or will engage, in a pattern or practice that violates this Act".

(3) STATUTORY DAMAGES.—
> (A) IN GENERAL.—For purposes of paragraph (1)(B)(ii),
> the amount determined under this paragraph is the amount
> calculated by multiplying the number of violations (with
> each separately addressed unlawful message that is trans-
> mitted or attempted to be transmitted over the facilities
> of the provider of Internet access service, or that is trans-
> mitted or attempted to be transmitted to an electronic
> mail address obtained from the provider of Internet access
> service in violation of section 5(b)(1)(A)(i), treated as a
> separate violation) by—
>> (i) up to $100, in the case of a violation of section
>> 5(a)(1); or
>>
>> (ii) up to $25, in the case of any other violation
>> of section 5.
>
> (B) LIMITATION.—For any violation of section 5 (other
> than section 5(a)(1)), the amount determined under
> subparagraph (A) may not exceed $1,000,000.
>
> (C) AGGRAVATED DAMAGES.—The court may increase
> a damage award to an amount equal to not more than
> three times the amount otherwise available under this
> paragraph if—
>> (i) the court determines that the defendant com-
>> mitted the violation willfully and knowingly; or
>>
>> (ii) the defendant's unlawful activity included one
>> or more of the aggravated violations set forth in section
>> 5(b).
>
> (D) REDUCTION OF DAMAGES.—In assessing damages
> under subparagraph (A), the court may consider whether—
>> (i) the defendant has established and implemented,
>> with due care, commercially reasonable practices and
>> procedures designed to effectively prevent such viola-
>> tions; or
>>
>> (ii) the violation occurred despite commercially
>> reasonable efforts to maintain compliance with the
>> practices and procedures to which reference is made
>> in clause (i).

(4) ATTORNEY FEES.—In any action brought pursuant to
paragraph (1), the court may, in its discretion, require an
undertaking for the payment of the costs of such action, and
assess reasonable costs, including reasonable attorneys' fees,
against any party.

117 STAT. 2716        PUBLIC LAW 108–187—DEC. 16, 2003

15 USC 7707.    **SEC. 8. EFFECT ON OTHER LAWS.**

(a) FEDERAL LAW.—(1) Nothing in this Act shall be construed to impair the enforcement of section 223 or 231 of the Communications Act of 1934 (47 U.S.C. 223 or 231, respectively), chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, United States Code, or any other Federal criminal statute.

(2) Nothing in this Act shall be construed to affect in any way the Commission's authority to bring enforcement actions under FTC Act for materially false or deceptive representations or unfair practices in commercial electronic mail messages.

(b) STATE LAW.—

(1) IN GENERAL.—This Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

(2) STATE LAW NOT SPECIFIC TO ELECTRONIC MAIL.—This Act shall not be construed to preempt the applicability of—

(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or

(B) other State laws to the extent that those laws relate to acts of fraud or computer crime.

(c) NO EFFECT ON POLICIES OF PROVIDERS OF INTERNET ACCESS SERVICE.—Nothing in this Act shall be construed to have any effect on the lawfulness or unlawfulness, under any other provision of law, of the adoption, implementation, or enforcement by a provider of Internet access service of a policy of declining to transmit, route, relay, handle, or store certain types of electronic mail messages.

15 USC 7708.    **SEC. 9. DO-NOT-E-MAIL REGISTRY.**

Deadline.
Reports.

(a) IN GENERAL.—Not later than 6 months after the date of enactment of this Act, the Commission shall transmit to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Energy and Commerce a report that—

(1) sets forth a plan and timetable for establishing a nationwide marketing Do-Not-E-Mail registry;

(2) includes an explanation of any practical, technical, security, privacy, enforceability, or other concerns that the Commission has regarding such a registry; and

(3) includes an explanation of how the registry would be applied with respect to children with e-mail accounts.

(b) AUTHORIZATION TO IMPLEMENT.—The Commission may establish and implement the plan, but not earlier than 9 months after the date of enactment of this Act.

15 USC 7709.    **SEC. 10. STUDY OF EFFECTS OF COMMERCIAL ELECTRONIC MAIL.**

Deadline.
Reports.

(a) IN GENERAL.—Not later than 24 months after the date of the enactment of this Act, the Commission, in consultation with the Department of Justice and other appropriate agencies, shall submit a report to the Congress that provides a detailed analysis of the effectiveness and enforcement of the provisions of this Act and the need (if any) for the Congress to modify such provisions.

PUBLIC LAW 108–187—DEC. 16, 2003    117 STAT. 2717

(b) REQUIRED ANALYSIS.—The Commission shall include in the report required by subsection (a)—

(1) an analysis of the extent to which technological and marketplace developments, including changes in the nature of the devices through which consumers access their electronic mail messages, may affect the practicality and effectiveness of the provisions of this Act;

(2) analysis and recommendations concerning how to address commercial electronic mail that originates in or is transmitted through or to facilities or computers in other nations, including initiatives or policy positions that the Federal Government could pursue through international negotiations, fora, organizations, or institutions; and

(3) analysis and recommendations concerning options for protecting consumers, including children, from the receipt and viewing of commercial electronic mail that is obscene or pornographic.

**SEC. 11. IMPROVING ENFORCEMENT BY PROVIDING REWARDS FOR INFORMATION ABOUT VIOLATIONS; LABELING.**

*Reports.*
*Deadlines.*
*Procedures.*
*15 USC 7710.*

The Commission shall transmit to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Energy and Commerce—

(1) a report, within 9 months after the date of enactment of this Act, that sets forth a system for rewarding those who supply information about violations of this Act, including—

(A) procedures for the Commission to grant a reward of not less than 20 percent of the total civil penalty collected for a violation of this Act to the first person that—

(i) identifies the person in violation of this Act; and

(ii) supplies information that leads to the successful collection of a civil penalty by the Commission; and

(B) procedures to minimize the burden of submitting a complaint to the Commission concerning violations of this Act, including procedures to allow the electronic submission of complaints to the Commission; and

(2) a report, within 18 months after the date of enactment of this Act, that sets forth a plan for requiring commercial electronic mail to be identifiable from its subject line, by means of compliance with Internet Engineering Task Force Standards, the use of the characters "ADV" in the subject line, or other comparable identifier, or an explanation of any concerns the Commission has that cause the Commission to recommend against the plan.

**SEC. 12. RESTRICTIONS ON OTHER TRANSMISSIONS.**

Section 227(b)(1) of the Communications Act of 1934 (47 U.S.C. 227(b)(1)) is amended, in the matter preceding subparagraph (A), by inserting ", or any person outside the United States if the recipient is within the United States" after "United States".

**SEC. 13. REGULATIONS.**

*15 USC 7711.*

(a) IN GENERAL.—The Commission may issue regulations to implement the provisions of this Act (not including the amendments made by sections 4 and 12). Any such regulations shall be issued in accordance with section 553 of title 5, United States Code.

117 STAT. 2718        PUBLIC LAW 108–187—DEC. 16, 2003

(b) LIMITATION.—Subsection (a) may not be construed to authorize the Commission to establish a requirement pursuant to section 5(a)(5)(A) to include any specific words, characters, marks, or labels in a commercial electronic mail message, or to include the identification required by section 5(a)(5)(A) in any particular part of such a mail message (such as the subject line or body).

15 USC 7712.    **SEC. 14. APPLICATION TO WIRELESS.**

(a) EFFECT ON OTHER LAW.—Nothing in this Act shall be interpreted to preclude or override the applicability of section 227 of the Communications Act of 1934 (47 U.S.C. 227) or the rules prescribed under section 3 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. 6102).

Deadline.    (b) FCC RULEMAKING.—The Federal Communications Commission, in consultation with the Federal Trade Commission, shall promulgate rules within 270 days to protect consumers from unwanted mobile service commercial messages. The Federal Communications Commission, in promulgating the rules, shall, to the extent consistent with subsection (c)—

(1) provide subscribers to commercial mobile services the ability to avoid receiving mobile service commercial messages unless the subscriber has provided express prior authorization to the sender, except as provided in paragraph (3);

(2) allow recipients of mobile service commercial messages to indicate electronically a desire not to receive future mobile service commercial messages from the sender;

(3) take into consideration, in determining whether to subject providers of commercial mobile services to paragraph (1), the relationship that exists between providers of such services and their subscribers, but if the Commission determines that such providers should not be subject to paragraph (1), the rules shall require such providers, in addition to complying with the other provisions of this Act, to allow subscribers to indicate a desire not to receive future mobile service commercial messages from the provider—

(A) at the time of subscribing to such service; and

(B) in any billing mechanism; and

(4) determine how a sender of mobile service commercial messages may comply with the provisions of this Act, considering the unique technical aspects, including the functional and character limitations, of devices that receive such messages.

(c) OTHER FACTORS CONSIDERED.—The Federal Communications Commission shall consider the ability of a sender of a commercial electronic mail message to reasonably determine that the message is a mobile service commercial message.

(d) MOBILE SERVICE COMMERCIAL MESSAGE DEFINED.—In this section, the term "mobile service commercial message" means a commercial electronic mail message that is transmitted directly to a wireless device that is utilized by a subscriber of commercial mobile service (as such term is defined in section 332(d) of the Communications Act of 1934 (47 U.S.C. 332(d))) in connection with such service.

15 USC 7713.    **SEC. 15. SEPARABILITY.**

If any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application of such provision to other persons or circumstances shall not be affected.

PUBLIC LAW 108–187—DEC. 16, 2003          117 STAT. 2719

**SEC. 16. EFFECTIVE DATE.**

The provisions of this Act, other than section 9, shall take effect on January 1, 2004.

15 USC 7701 note.

Approved December 16, 2003.

LEGISLATIVE HISTORY—S. 877:

SENATE REPORTS: No. 108–102 (Comm. on Commerce, Science, and Transportation).
CONGRESSIONAL RECORD, Vol. 149 (2003):
    Oct. 22, considered and passed Senate.
    Nov. 21, considered and passed House, amended.
    Nov. 25, Senate concurred in House amendment with an amendment.
    Dec. 8, House concurred in Senate amendment.

○

ATTESTATION OF CONCURRENCE IN FILING

United States v. Member Source Media LLC and Chris Sommer, No. CV 08-642 (N.D. Cal.)

     In accord with the Northern District of California's General Order No. 45, Section X.(B), I attest that concurrence in the filing of this document has been obtained from each of the other signatories who are listed on the signature pages.

     In addition, pursuant to the final sentence of Section X.(B) of General Order No. 45, I am attaching a scanned image of the signature pages, signed by the parties, of the document being electronically filed, in lieu of maintaining the paper record for subsequent production if required.

Dated: January 30, 2008

/S/ John W. Burke
JOHN W. BURKE (VA Bar No. 72780)
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 353-2001
Josh.Burke@usdoj.gov

 1  FOR THE PLAINTIFF:

 2  UNITED STATES OF AMERICA:

 3  JEFFREY S. BUCHOLTZ
    Acting Assistant Attorney General
 4  Civil Division
    U.S. Department of Justice
 5
    EUGENE M. THIROLF
 6  Director,
    KENNETH L. JOST
 7  Deputy Director,
    Office of Consumer Litigation
 8  _____

 9  JOHN W. BURKE (VA. BAR NO. 72780)
    Trial Attorney
10  Office of Consumer Litigation
    Civil Division
11  U.S. Department of Justice
    P.O. Box 386
12  Washington, D.C. 20044
    Telephone: 202-353-2001
13  Facsimile: 202-514-8742
    Email: josh.burke@usdoj.gov
14

15  FOR THE FEDERAL TRADE COMMISSION:

16  _____

17  LOIS C. GREISMAN
    Associate Director for Marketing Practices
18

19

20  STEPHEN L. COHEN
    ETHAN ARENSON
21  Attorneys, Federal Trade Commission
    600 Pennsylvania Ave., N.W.
22  Washington, D.C.  20580

23

24

25

26

27

28

                    Page 16 of 17

1   FOR THE DEFENDANTS:

2

3   Jeffrey K. Riffel
    Jeffer Mangers Butler & Marmaro LLP
4   1900 Avenue of the Stars, 7th Floor
    Los Angeles, CA 90067
5   _____

6   Member Source Media LLC
    BY: _____
7
    204 East 2nd Avenue, Suite 517
8   San Mateo, CA 94401

9

10  Chris Sommer,
    Individually and as Manager of Member Source Media LLC
11

12          **SO ORDERED**  this _____ day of _____, 2007.

13

14                              _____
15                              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28